All right, counsel. The next case we have is Horn v. Union Pacific. We have Mr. Groves for the appellate and Mr. Jones for the appellate. So, Mr. Groves, if you're ready, you may proceed, sir. Mr. Jones. May it please the Court. This is an FBLA case for a 58-year-old personal injury, 58-year-old railroad worker, claiming shoulder injuries from cumulative trauma of 30 years of getting on and off the board of railroad equipment. He had two shoulder surgeries, was disabled, and had a claim for $350,000 in arrears. There's a number of things in this case that are not in dispute. Number one, that Mr. Jones' wife was attending the trial, came up and watched some of the trial. Number two, that while she was up there watching the trial one day during a recess, in the hall, she approached one of the people who was sitting on the jury, Juror Dragich. Number three, that she had an ex parte conversation with that juror, apparently in the hallway of the courtroom. Number four, that she should not have done this. No one's saying that it was appropriate for a wife of a defense counsel, a lead attorney in the case, to have an ex parte conversation with the jury. I think everyone agrees with that. Everyone agrees that a jury trial is part of a remedy that injured railroad workers get, and I think that there won't be any dispute that people are entitled, both sides and all parties, are entitled to a fair trial. And a fair trial includes the appearance of justice being done. And if you ask ten lawyers, or if you ask ten people on the street, how would you feel about a case? If there was a juror who was talking with the wife of the lead lawyer from the other side during the trial, how would you feel about that juror deciding your case? I would bet you nine out of ten, if not ten out of ten, would say, that doesn't sound right to me. And there's no dispute that the lady knew that the juror was a juror? She was sitting in the courtroom directly behind Mr. Jones. The juror was in the jury boxes. She could see him. She knows he's a juror. What happened in the conversation, I don't know. I can't say. And I'm not, by the way, saying that Mr. Jones I think that's what the judge told you, right? I'm sorry, Your Honor. Didn't the other attorney's wife talk to the judge and then the judge told you? No, sir. Mr. Jones actually came up to the judge and myself the morning after the contact happened and told us what his wife had told him happened. And you knew what was talked down there? Generally. He described what she talked about, which was basically the juror apparently had an older sister who was good friends with Mr. Jones' daughter. And they had connections. They went to the same high school. They were classmates. OK. That's what Mr. Jones said. Did you believe that? It sounds reasonable to me, Judge. OK. I thought bringing the juror in, frankly, for questioning was just going to make things worse. I can't tell you what she did or didn't believe in the conversation about Mrs. Jones and Mr. Jones or their kids or the case. I don't know. But if we bring her in and she sits down and we say, now, you had a conversation yesterday with a woman who's Mr. Jones' wife. Do you remember this woman? What did you talk about? All that's going to do is highlight the relationship. And in my view, it probably made it worse for me. And I don't think she's going to say, I can't be fair.  I really don't think that was going to happen. What I'm arguing, Judge, is in a case like this where you have an ex parte contact by the spouse of a lawyer with a juror, the per se rule should be that juror should be excluded. That's what we ask for. The juror should be exempt. There's a case that says that? I'm sorry? There's a case that says that? There's not a case that says it either way, Judge. You're right. I don't have a case that says it. I'm suggesting that I believe that would be because you have to have the appearance of fairness. And frankly, that just doesn't appear fair. And I don't think if you ask anyone, it just doesn't appear fair. And to put me in the position where I now have to ask questions of this juror about his wife and their relationship, that is not fair to the plaintiff. Or if I were on the defense side, it wouldn't be fair to the defendant. And so, Your Honor, we're suggesting that there should be a per se rule in cases that if a – just like Mr. Jones had talked with the juror, I'd say the same thing. If he does or his spouse does, that juror should be excluded. That's what we requested. And that's what we would ask for, Judge. We're asking you to reverse for a new trial. I'm going to submit the other issue that we braved on the briefs. I know you've read those. Are there any other questions? Then you'll have an opportunity for a rebuttal, Mr. Jones. Thank you very much, sir. Thank you. Mr. Jones? Thank you. May it please the Court. First of all, I want to make very clear, the record that you have before you is the substance of what the conversation is. There is no other record of any other conversation. There is – as the record demonstrates, I brought this to the attention of the Court. I don't even know if there's an obligation for me to do so, but I felt because that's the ethical thing to do. Apparently that was the right thing to do. And that's what I did. And this is how this all came about. My wife attended a half-day of the trial the previous day. And apparently, during a recess, she had struck up this conversation with this juror that was on our jury panel. She thought she looked like the sister that wasn't a good friend of my daughter, but she was a friend that actually played tennis with my daughter in high school. That was the conversation. Then this juror told my wife that she had just graduated from the University of Illinois, which if you look at the transcript of the void diary, she told all of us the same thing. My wife also mentioned that our son, who has now graduated from the University of Illinois this past May, but at the time was attending the University of Illinois. That is in some substance of what the conversation was. Now, when I got home that evening, my wife tells me about this conversation. And I obviously wasn't happy because even though this juror did not connect me to my wife, there's absolutely no connection there. My wife didn't say, that's my husband sitting there trying the case.  But because the conversation took place, I felt it was the appropriate thing to do. So the very first thing I did the next morning, I told the judge, I told Mr. Groves. The judge says, I don't see any problem here, but we'll go ahead and make a record. So I made the record. I put in the record exactly what was said. And then the judge did the appropriate thing. Judge Gleason says, look, Mr. Groves, if you think that there's something more here than this very innocuous conversation that has absolutely nothing to do with this trial. There's no even connection of this conversation, my wife being my wife. She was present in the courtroom, no question about it. But there was no connection whatsoever. But he gave Mr. Groves the opportunity to boydire the jury. Now, actually, the judge probably would have done it himself, would have asked any questions that would have been done. And quite frankly, if that boydire was taken, it would probably be more prejudicial to me than it would be to Mr. Groves. But in any event, the judge gave Mr. Groves the opportunity to have the juror brought in. Because, of course, the purpose of bringing the juror in would be to find out if what I recited to the court is what actually took place. Have I lied? Have I misrepresented what the conversation took place? Did the juror somehow feel that there was some inappropriate content? And by the way, as Judge Gleason pointed out in his ruling, he said, you know, we give this instruction over and over to the jurors. We tell one of our standard instructions every time they take a break, you're not to be talking to parties, witnesses, or anybody associated with this case. The fact that this juror doesn't come forward and say that she's had this conversation with my wife, by implication, would imply that she never made the connection whatsoever, that this woman she's talking to is any relation to me whatsoever. But the bottom line is, if there's anything that Mr. Groves deemed inappropriate, or he had any fears that there was something inappropriate about the conversation, the judge is giving him the appropriate opportunity to explore that in the appropriate way. And by the way, I've actually been involved in a case a few years ago in a federal court where some of the jurors actually approached the judge, and my opponent's relatives actually approached these jurors outside the court. And so these jurors approached the judge and informed the judge of that fact, and so the judge did the appropriate thing in that case, and he brought those jurors in outside the presence of the jurors individually and asked them about the contact. And he asked them, would this affect you whatsoever in deciding this case? And the jurors all indicated no. When they recognized that these were the family members, they refused to talk to them, and there was no contact. So there's absolutely no basis for excusing the jurors. But he did the appropriate thing, the same thing that was offered to Mr. Groves, which is to bring this juror in and see if there's something more to this The record reflects what was said. I can't tell you anything more than what was said, and obviously I tried to give the complete and fair recitation of what my wife informed me of the conversation. But I bring it to the attention of the court to give Mr. Groves the opportunity to see if, in fact, he feels that there's some prejudice there and he wants to explore it. And that's exactly the same thing that Judge Gleason did. There's cases, and we've cited several, but over and over, and I've been doing this for over 30 years, there's all sorts of situations that occur during trials where maybe a witness is in a hallway and strikes up a conversation with a juror. And, of course, that's why we give these admonishments to the jurors not to talk to anybody. And whenever any of that occurs, you don't just say, okay, we throw this juror off the jury panel and bring in somebody else. You first explore whether there was any inappropriate contact, and then if you determine that there is, then the juror is excused. You just don't excuse the juror because there is a conversation that took place that had absolutely nothing to do with the case, and that's what the case law is. There's no per se standard that any conversation that takes place with a juror that pertains to nothing to do with the case, that you automatically strike per se as Mr. Groves is trying to argue that she should change the law, that per se, any time that conversation takes place, the juror should be stripped. I don't understand the review on this as an abuse of discretion, but it does have the appearance of impropriety. Do you agree with that? No, I don't. The appearance of impropriety for your wife to speak to a juror? I don't agree because my wife is not a party. She's not a lawyer. I understand. So I don't agree that there was anything inappropriate with it. When you say inappropriate, I said appearance. Appearance. I guess to somebody it could have the appearance. One of the reasons, and so I wanted to be above board, and that's why I came forward with this conversation.  We did the right thing. Okay. No doubt. But this is not a situation. Now, he has the opportunity before a verdict to address this issue, and now because he receives an unfavorable verdict, he raises this on appeal. And that's not the appropriate way to handle this. If there is something inappropriate, that's something that can be explored and decided based upon evidence and on a record, not on the basis of I have a suspicion. So you contend that just moving from this trial was not enough. He should have had a conversation. The judge should have had a conversation with the juror. Actually, Mr. Groves did move. He didn't move. No, he did not move. I thought he did move. No, no. What Mr. Groves – the simple thing that Mr. Groves asked for is that this juror be removed and that the alternate juror be placed in – he never moved for a misdemeanor. The only remedy he sought was the substitution of this juror with the alternate juror. And Judge Gleason says, I can't just remove – move this juror when there's absolutely no evidence in this record that there's anything inappropriate. And he says – so that's why he told Mr. Groves, if you deem that there's something you will need to explore further, he gives him the opportunity. That's the way we do things. We don't wait until after a trial because you have an unfavorable verdict. Use that as a means of coming back and then seeking a new trial, which is exactly what's transpiring here. The case law – there's cases – the cases that we've cited in the record involve cases where, for example, the Turner case is a case where in a criminal prosecution, one of the prosecution members actually has a conversation with one of the jurors during the course of the trial. And as the court said, just because he had this conversation and the conversation was something to the effect, are you still deliberating or is that – have you resumed deliberations or something to that effect? And the court said, that isn't sufficient. There's absolutely no case out there that says that when a non-party to a lawsuit has a conversation with one of the jurors, and even though there's no question that that non-party to the lawsuit is my wife, that that juror wasn't even identified as being – that this is my wife. As a matter of fact, as you can imagine, one of the standard questions we have of all the jurors when we're selecting a juror is, does any of the jurors know it? And of course, this juror never knew me. She didn't know me from that. She didn't identify that she knew me. And so what Mr. Gross is trying to argue is that we're going to take a quantum leap. First of all, that she knows that this is my wife that she had this conversation with, which isn't demonstrated at all in the record. And second of all, that there's – we automatically have to assume that there is some type of prejudice, and that's not it. When a case comes before an appellate court, of course, you're reviewing it for abuse of discretion standard, and you have to base it on the record that Judge Gleeson had, and that this is the record. And as you can see from the record, there's absolutely nothing in this record that would support that there was anything inappropriate, any conversation whatsoever about the case that in any matter would have prejudiced Mr. Gross' client, Mr. Horne, in this case. As far as the other issue on the manifest way to the evidence, I'm not going to regurgitate Mr. Gross didn't really argue this, but I just want to remind the court the record is clear that there is an abundance of evidence to support the defense verdict that was rendered by the jury in this case. There is medical evidence that rejected the plaintiff's claim of medical causation of the problem. There is impeachment of the plaintiff himself, where he himself admitted that he had done this task of getting on and off moving locomotives numerous times in his career, never sustained any injury, twinges, any problem whatsoever in doing so. And although there's impeachment testimony with the plaintiff, although on direct says that he was doing this task at 10 miles an hour on cross examination as brought up with his impeachment from his deposition that he was doing it at speeds of 4 miles per hour or less that he considered safe and appropriate speed. So the bottom line is there is an abundance of evidence to support the verdict that was rendered by the jury in the case. So this appeal, and those are the sole issues raised by the plaintiff on appeal that the verdict was against the manifest way to the evidence. And then secondly, as to this issue of the contact of my wife with the juror. And I submit to you that there is no abuse of discretion. Judge Gleason followed the correct procedure that's enunciated in the various cases to give an ample opportunity to explore that issue. If plaintiff's counsel chose to do so, plaintiff's counsel weighed that issue by choosing not to explore. And so therefore, what we're left with is the record as it exists. And there's absolutely nothing in this record that shows that there was any prejudice whatsoever as a result of that. Thank you. Unless there's any other questions. Thank you very much. Mr. Mr. Jones said that it's not right for me to wait until after a trial. To ask for something that I should have asked for in the trial court. Implying that I didn't ask for relief. That is untrue and he knows it. It's in the record. I asked this judge to strike the juror and put the alternate on. Period. I did ask for relief. It's not like I waited until I got a bad result and said, gee, what am I going to do now? I did also ask in my motion for new trial for the judge to give me a new trial on the same issue. So it was raised at trial and I did ask for the relief. Mr. Jones wants to say, well, where's the prejudice? The prejudice is the contact in the conversation. That's the prejudice. It shouldn't happen. It doesn't look right. It doesn't smell right. And it isn't right. It shouldn't happen. He knows it shouldn't happen. It was wrong. And the fact of the matter is bringing his wife in, putting her on the road and asking her questions, which I guess I could ask for, or bringing the jury to ask questions doesn't fix what happened, which is her standing out in the hallway and talking with the juror. You can't unring that bell. There is no case. I'm sorry. And I know we're not bound by the Turner case, but the Turner case does talk about waiver or not prejudice. It does, Your Honor. In the Turner case, the difference is they did not ask for relief. They did not ask that the juror be struck and the juror be substituted, which is what we specifically did ask for. I agree that if I had not asked for some relief, you could argue waiver and I'd have to make a plain error argument or something to that effect. Here I did ask for relief, unlike in Turner where they didn't. This is a strange case. It's a strange situation. I admit that, and it's odd. And that's why there is no case directly on point. But it doesn't look right, and we believe that for justice to be done, the appearance of justice must be done, and the proper result here would be a new trial. Do you all have any further questions? Thank you, counsel. Thank you for your arguments, both of you. Thank you very much. We'll take the matter under advisement and issue it at this stage.